FILED
2023 Oct-03 PM 02:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| ROBERT DOWDY HAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NUMBER: |
| | ) | |
| ERIC PURYEAR, in his individual | ) | |
| capacity; AND HUNTER WHITE, in his | ) | |
| individual capacity, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes now the plaintiff, Robert Hand, initiating this legal action seeking monetary damages. This action is brought forth to safeguard rights guaranteed under 42 U.S.C. §1983, which offers redress for violations of rights, privileges, or immunities protected by the United States Constitution and the laws of the State of Alabama.

## I.    INTRODUCTION

1.    In accordance with the Fourth Amendment, law enforcement has the authority to engage in consensual interactions with the public, including voluntary searches. Additionally, law enforcement may conduct a brief investigatory stop of an individual under the following conditions: a) when, considering the totality of circumstances, the officer possesses a reasonable and articulable suspicion that the individual is or is about to be involved in criminal activity, and b) when the scope

1

of the stop remains reasonably connected to the circumstances that initially justified it. During such a stop, if the officer reasonably believes, given the circumstances, that their safety is at risk, they are authorized to conduct a narrowly focused search of the individual's outer clothing for the purpose of identifying potential weapons.

2.      Before escalating the investigatory stop to a seizure – which involves law enforcement physically restraining the individual through physical force or conveying commands that imply compliance is required - the officer must possess a reasonable belief that there is a significant likelihood of the individual's involvement in criminal activity, *i.e.*, the officer must have probable cause. In cases of seizure or arrest, law enforcement is mandated to utilize a level of force commensurate with the level of threat they perceive. Furthermore, if one officer observes another exceeding the appropriate level of force or otherwise infringing upon the suspect's constitutional rights, they are obligated to intervene to safeguard the suspect's constitutional rights.

3.      This case involves deputies' unconstitutional stop, arrest, use of excessive force, and failure to intervene on February 23, 2022.

4.      Based on the facts below and causes of action, Plaintiff Robert Hand ("Hand") respectfully asks this Court to hold Defendants Eric Puryear and Hunter White accountable for their actions or inaction and provide just compensation for the same.

## II.   <u>JURISDICTION AND VENUE</u>

5.     The authority of this Court is invoked for Counts I - V pursuant to 28 U.S.C. § 1331, because each is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and each alleges violations of the United States Constitution. The supplemental authority of this Court is invoked under 28 U.S.C. § 1367(a) for Counts VI - VII asserting pendent state-law claims.

6.     Venue is proper in this division and district under 12 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this division and district. Venue is proper in this division and district under 28 U.S.C. § 1391(b)(1) and (c)(2) because the defendants reside in this division and district as defined.

## III.   <u>PARTIES</u>

7.     The plaintiff, Robert Hand ("R. Hand"), is an adult white male and resident and citizen of Colbert County, Alabama.

8.     The defendant, Eric Puryear ("Puryear"), is an adult white male and resident and citizen of Colbert County, Alabama. Defendant Puryear is sued only in his individual capacity, not in his official capacity.

9.     The defendant, Hunter White ("White"), is an adult white male and resident and citizen of Colbert County, Alabama. Defendant White is sued only in his individual capacity, not in his official capacity.

3

IV.   **STATEMENT OF FACTS**

10.    February 23, 202, Eric Puryear ("Puryear") was working as a Colbert County deputy sheriff and Hunter White ("White") was working as a reserve deputy sheriff with Puryear. White was employed full-time as a Colbert County jailer.

11.    Like all graduates of academies approved by the Alabama Peace Officers Standard and Training Commission ("APOSTC"), the basic training Puryear received at the Alabama Criminal Justice Training Center in Selma, Alabama, covered these legal issues:

    a.  Constitutional foundations.

    b.  Detention, arrest, use of force, search, and seizure law.

        1)  The interpretation and applicability of these terms, statutes, and case decisions:

            i.    Color of Law
            ii.   18 U.S.C. §§ 241-242
            iii.  U.S. Constitution, Amendments IV, XIV-XV
            iv.   *Terry v. Ohio,* 392 U.S. 1 (1968)
            v.    *Tennessee v. Garner,* 471 U.S. 1 (1984)
            vi.   *Graham v. Conner*, 490 U.S. 386 (1989)

    c.  Civil and criminal liability law.

        1)  The interpretation and applicability of this statute:

            i.    42 U.S.C. §§1983 and 1985

12.    To graduate, Defendant Puryear had to score 70% or higher on his legal issues exam.

4

13.   The Colbert County Sheriff's Office provides similar training for its reserve deputies like White.

14.   Defendant Puryear graduated in April 2021.

15.   February 23, 2022, a E911 call from an anonymous caller and the caller's assertions were transmitted to the laptop in Puryear's cruiser and he and or White read the transmission. From the laptop it was evident that the anonymous caller reported the presence of a suspicious male, wearing a black hoodie and blue shorts, who had been left by a truck on County Line Road in a ditch on the other side of County Line Road across from the Zion Baptist Church. Notably, the caller did not provide any details suggesting criminal activity by the male.

16.   On that day, R. Hand was wearing a light to medium blue sweatshirt with a large white Church of God, Camp Utopia, insignia on its front. He also wore full-length blue denim overalls tucked into dark rubber boots.

17.   R. Hand was looking for bottles and cans along Wolf Springs Road, South of the Zion Baptist Church. He planned afterwards to go visit his cousin who owns and lives on the land adjacent to where he was searching and behind and adjacent to the church.

18.   R. Hand was not engaged in any suspicious activity or activity that could be perceived as criminal.

19.   R. Hand was not carrying tools or weapons in his hands, or any other

dangerous or threatening looking objects.

20.    Puryear and White were traveling on County Line Road when they passed Wolf Springs Road, and as they passed, one or both observed R. Hand on Wolf Springs Road.

21.    The area in which Puryear and White saw R. Hand was not a high crime area.

22.    The land next to the road where Puryear and White saw R. Hand was rural and owned by members of R. Hand's family. His family owns the acreage on Wolf Spring Road, from the church East to the bridge.

23.    Despite neither the last known location nor R. Hand matching the description provided to E911, Puryear and White reversed course on County Line Road to go back to Wolf Springs Road.

24.    When they turned on Wolf Springs Road, they found R. Hand with his back to them running towards his cousin's home.

25.    Puryear stopped the cruiser on the road, yelled at him, and White pursued R. Hand on foot.

26.    R. Hand had started running to his cousin's house without realizing the cruiser had reversed course to turn down Wolf Springs Road. He turned at his cousin's mailbox and was on his cousin's land when White tackled him.

27.    Using the weight of his body and hands, White physically restrained R.

Hand on the ground.

28.     White did not instruct R. Hand that they wanted to question him, that he was under arrest, or to place his hands behind his back. White did not ask R. Hand any investigatory questions.

29.     Under White's force, R. Hand remained on the ground lying on his side, and he did not attempt to flee again.

30.     After White had restrained R. Hand, Puryear exited the cruiser, but he did not appear intent on questioning R. Hand.

31.     Rather, Puryear moved quickly towards where White had restrained R. Hand, and he drew his Taser X26 (Taser's most powerful stun gun) from its holster.

32.     Over the next 94 seconds, the following happened:

   a.  As Puryear approached White and R. Hand, Puryear yelled multiple
       times at White to "MOVE," "MOVE," "MOVE".

   b.  When White moved, with R. Hand lying on the ground where he left
       him, Puryear fired his taser; according to Puryear, the projectile prongs
       of the taser struck R. Hand in his leg and torso. As it discharged R.
       Hand rolled on his back.

   c.  In proximity to Puryear's use of his taser, neither White nor Puryear
       gave verbal instructions to R. Hand before its discharge.

   d.  R. Hand weighs around 130 pounds, and the taser temporarily
       incapacitated and confused R. Hand by inducing neuromuscular
       incapacitation, *e.g.*, the Taser energy sends a signal to the muscles
       telling them to constrict.

   e.  Then, Puryear repeatedly yelled at R. Hand, "HANDS", "HANDS",
       "HANDS". He did not tell R. Hand to place his hands behind his back.

f.  Within fractions of a second after the taser exhausted its discharge, Puryear firmly gripped the right side of R. Hand's head or face using his left hand to prevent any movement. This ensured that R. Hand could not evade the series of powerful punches next delivered by Puryear's closed right fist to R. Hand's left cheek/ear.

g.  Immediately after that Puryear yelled "Fuck" as he grabbed R. Hand by the sweatshirt, rolled him on his side to face him, and using his knee delivered multiple blows to R. Hand's head and body.

h.  Puryear continued to hold R. Hand's sweatshirt while jerking him around; R. Hand yelled out in distress, "What the hell is wrong with you-all."

i.  With R. Hand lying on his stomach and his head turned so that the right side of his face was exposed, Puryear yelled, "Get on your fucking belly." R. Hand responded, "I am, I'm on my belly."

j.  Puryear responded to R. Hand's comment by punching him closed fist in his right eye.

k.  Puryear next yelled, "Stop fucking resisting," but he wasn't resisting, and R. Hand responded, "I'm not. What are you doing to me?"

l.  As White was securing the handcuff on R. Hand's right hand, Puryear aggressively pulled R. Hand's right shoulder, snatching R. Hand's hand away from White and preventing him from securing the cuff.

m. Puryear then yelled "STOP", and again using his knee, subjected R. Hand to multiple body blows that knocked the wind out of R. Hand.

n.  Puryear yelled "Give us your hands, HANDS, HANDS, HANDS."

o.  R. Hand complied, and as White fumbled with the handcuffs trying again to secure R. Hand's right hand, Puryear used his taser, without the use of the projectile prongs, to directly drive stun R. Hand.

p.  The duration of the direct stun further incapacitated R. Hand.

8

q. Puryear and White stood over R. Hand while Puryear kept yelling "HANDS, HANDS, HANDS."

r. Puryear had accidentally stunned himself and he reloaded the taser to fire projectile prongs into R. Hand out of anger.

s. Puryear pulled the trigger to fire the projectile prongs, but the Taser would not discharge.

t. After the misfire, Puryear, and White handcuffed R. Hand.

33.    While R. Hand was handcuffed lying face down, Puryear asked him why he ran. R. Hand replied that he was not running from them specifically.

34.     Puryear told R. Hand, "You're pretty fucking stupid, you know that?", he called R. Hand a "little fucking piece of shit," and the injured R. Hand to "Stand the fuck up, there is nothing wrong with your fucking legs."

35.    After the encounter, Puryear radioed that R. Hand had "severe head injuries."



36.    The body camera footage shows that before both instances where Puryear drive stunned R. Hand, he never told him to place his hands behind his back.

37.    Puryear walked to the cruiser and radioed the arrest. When he turned

9

around White, standing over the handcuffed R. Hand lying on the ground, raises his arms with closed fist to signal a V, victory.

38.    Puryear and White walked the handcuffed R. Hand to the cruiser where Puryear called in the arrest on its radio.

39.    Neither Puryear nor White feared that R. Hand possessed a weapon or that he was a danger to them; at no time before the three returned to the cruiser did, they frisk him.

40.    At no time did Puryear or White read or otherwise apprise R. Hand of his *Miranda* rights.

41.    While at the cruiser, the handcuffed R. Hand pulled from his pocket and dropped on the ground a soft, bagged item; R. Hand was not acting in a threatening manner and the item was not a weapon or anything resembling a weapon. Still, this infuriated Puryear.

42.    Puryear grabbed the handcuffed R. Hand and slammed him against the hood of the cruiser.

43.    Puryear then slung the handcuffed R. Hand to the ground, falsely accusing him of "resisting."

44.    Thereafter, Puryear and White performed an invasive search of R. Hand that included the emptying of the inside of all his pockets.

45.    Officer Brandon Hood with the City of Leighton's Police Department.

Brandon Hood left the City of Leighton to work as a Lawrence County Deputy Sheriff; his resignation was force on or about Friday, September 22, 2023.

46.    Once back-up arrived on the scene, Puryear taunted the handcuffed R. Hand telling him, "You got to get conditioned a little better, that was easy." White then got on the phone for personal reasons concerning a cost estimate, and told the caller, "I literally just got done with a foot pursuit, tased a dude, and had to beat the hell out of him. . . I'm going to have to go to the hospital with this one. . . he got his ass beat to say the least."

47.    Among other things, R. Hand was charged with "Attempt to Elude" and "Resisting Arrest."

48.    Under Section 13A-10-52 of the Alabama Code, "It shall be unlawful for a person to intentionally flee by any means from anyone the person knows to be a law enforcement officer if the person knows the officer is attempting to arrest the person. . . a Class A misdemeanor." Under Section 13A-10-41 of the Alabama Code, "[a] person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a <u>lawful</u> arrest of himself or of another person. . . Resisting arrest is a Class B misdemeanor."

49.    An ambulance took R. Hand to Helen Keller Hospital where he was treated for his injuries. He was to be admitted to the hospital, but without explanation, he was discharged and transported to the Colbert County Jail where he

stayed for weeks receiving medical care.

50.    After the incident, Puryear's superiors watched body-cam footage and inquired with Puryear as to why Puryear engaged R. Hand in such a manner and he responded that he was trained to do so while employed by the Sheffield Police Department, and that Sheffield police officers routinely respond in the same way. Puryear expressed no remorse for his conduct.

51.    If true, Puryear's training by the Sheffield Police Department was contrary to the training he received at the academy.

52.    Puryear's superiors, Chief Deputy Klaska, Sgt. Dan Coggins, and Sgt. Jonathan Terry, met with him on February 24, 2022, to administer verbal discipline concerning the R. Hand incident and document such via a letter to his file. The sheriff wanted to terminate Puryear, but the insurance company advised against doing so.

53.    The Sheriff's Office then requested that the Alabama Law Enforcement Agency ("ALEA") investigate Puryear's conduct.

54.    While awaiting the results of the investigation, Puryear was removed from patrol and placed on administrative duty; White was terminated from his job as a Colbert County jailer.

55.    March 9, 2023, a Colbert County grand jury indicted Puryear on a charge of assault for his use of excessive force against R. Hand. Puryear was

terminated after by the Colbert County Sheriff for his violation of many policies and rules.

56.     R. Hand's encounter with Puryear and White has caused him to suffer on an ongoing basis: headaches, back, and neck pain, pain running down his leg, pain running down his arm, vision problems, anxiety, and panic.

## V.     CAUSES OF ACTION

### FEDERAL CLAIMS

### A.     COUNT I: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. §1983 (UNLAWFUL INVESTIGATORY STOP)

57.     This cause of action, Count I, is brought against Defendants Puryear and White, in their individual capacities, through 42 U.S.C. §§ 1983 and 1988, for violating the Fourth Amendment.

58.     Plaintiff incorporates by reference, as if fully stated below, the factual allegations in Paragraphs 5-31, and 51-52, 54-55, *supra*.

59.     Plaintiff has a clearly established right to be free from investigatory stops by law enforcement where they lack a reasonable articulable suspicion that criminal activity is afoot.

60.     On February 23, 2022, Puryear and White were working as on-duty Colbert County law enforcement, while acting under the color of law within the meaning of 42 U.S.C. §1983.

61.     Puryear and White lacked the requisite reasonable articulable suspicion

to initiate an investigatory stop of R. Hand because a) their reason for doing so was based on an alleged bare report of suspicious activity made via cell phone by an unknown, unaccountable informant who gave no indication the male was engaged in or about to engage in in criminal, b) R. hand did not match the E911 description of the suspicious male, and c) when they returned to Wolf Springs Road and spotted R. Hand, he was already running towards his cousin's home, that is—they did not observe whether their cruiser caused him to run.

62.    White's tackling and restraint of R. Hand started an unlawful investigatory stop — a *Terry*-stop.

63.    Consequently, Puryear and White violated R. Hand's Fourth Amendment right to be free from unreasonable seizures. Puryear and White further violated R. Hand's Fourth Amendment rights because without reasonable suspicion, their use of force to compel his interaction, even if *de minimis*, was illegal.

64.    In addition, or alternatively, to the extent that Puryear and White prove the existence of a reasonable suspicion that criminal activity was afoot, they violated R. Hand's Fourth Amendment rights because as part of the investigatory stop they used unreasonable force to compel R. Hand's interaction.

65.    Puryear's and White's report of the incident is pretext for their knowing violation of R. Hand's constitutional rights. In their reports they assert E911 described the male's clothing as a "blue sweatshirt" and or a "blue sweatshirt

14

and blue jeans" when E911 described the male as wearing a black hoodie and blue shorts.

66.    Based on the preceding, reasonable jurors could conclude that Puryear and White lacked reasonable suspicion to initiate an investigatory stop of R. Hand and any use of force against him also violated his constitutional rights; or in the alternative, if reasonable suspicion is proved, that the extent of the force Puryear and White used to compel R. Hand's interaction was unreasonable; Puryear and White knew or reasonably should of have known that they were violating R. Hand's federally protected constitutional rights; Puryear and White were plainly incompetent; or their actions were done with a reckless indifference and a callous disregard for R. Hand's constitutional rights and well-being.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Puryear and White in their individual capacities; (2) award Plaintiff compensatory damages for mental anguish, (3) award Plaintiff Special Damages and General Damages to compensate him for lost and future earning capacity, medical bills, and to vindicate the violation of his valuable intangible constitutional rights; (4) award Plaintiff punitive damages, (5) award Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (6) award Plaintiff all other relief deemed proper by the Court.

**B.**     **COUNT II: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. §1983 (UNLAWFUL ARREST)**

67.     This cause of action, Count II, is brought against Defendant Puryear and White, in their individual capacities, through 42 U.S.C. §§ 1983 and 1988, for violating the Fourth Amendment.

68.     Plaintiff incorporates by reference, as if fully stated below, the factual allegations in Paragraphs 5-35, 46-47, 51-52, 54-55, 59, and 60-62, *supra*.

69.     Under the Constitution, a lawful warrantless arrest requires probable cause.

70.     Probable cause exists if a reasonable officer could conclude that there is a substantial chance of criminal activity.

71.     As shown by the crimes Puryear and White charged R. Hand with, "attempting to elude" and "resisting arrest, when they first sighted him they intended to arrest him, and that arrest occurred during their initial physicality with him, not sometime after.

72.     Given the totality of the circumstances, arguable probable cause did not exist for any crime as the facts known to Puryear and White were as follows: a) an anonymous informant gave a bare cell phone report of a suspicious male that did not describe criminal activity, b) R. Hand did not match the description of the male identified by the anonymous informant, c) flight alone cannot not establish probable cause, and, d) in the short interstitial time between White tackling and restraining

16

R. Hand and their decision to escalate the encounter to an arrest using a taser, physicality, and handcuffs, R. Hand did nothing from which someone could reasonably conclude there was a substantial chance of his criminal activity.

73.    When an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures.

74.    Puryear and White violated R. Hand's Fourth Amendment rights because they arrested him without arguable probable cause for any crime. They also violated R. Hand's Fourth Amendment rights because without probable cause, their use of any force to accomplish his arrest, even if *de minimis*, was illegal.

75.    Based on the preceding, reasonable jurors could conclude that Puryear and White lacked arguable probable cause to arrest R. Hand and any use of force against him in doing so also violated his constitutional rights; Puryear and White knew or reasonably should of have known that they were violating R. Hand's federally protected constitutional rights; Puryear and White were plainly incompetent; or their actions were done with a reckless indifference and a callous disregard for R. Hand's constitutional rights and well-being.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Puryear and White in their individual capacities; (2) award Plaintiff compensatory damages for mental anguish, (3) award Plaintiff Special Damages

and General Damages to compensate him for lost and future earning capacity, medical bills, and to vindicate the violation of his valuable intangible constitutional rights; (4) award Plaintiff punitive damages, (5) award Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (6) award Plaintiff all other relief deemed proper by the Court.

C.   **COUNT III: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. §1983 (UNLAWFUL SEARCH)**

76.   This cause of action, Count III, is brought against Defendant Puryear, in his individual capacity, through 42 U.S.C. §§ 1983 and 1988, for violating the Fourth Amendment of the United States Constitution.

77.   Plaintiff incorporates by reference, as if fully stated below, the factual allegations in Paragraphs 5-43, 46-47, 55, 59, 66, and 68-73, *supra.*

78.   From the facts known to Puryear, and White when they first arrested R. Hand, no reasonable officer could objectively find they had probable cause to arrest him for any crime.

79.   As such, their invasive search of R. Hand's person was not conducted incident to a lawful arrest in violation of his Fourth Amendment rights.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Puryear and White in their individual capacities; (2) award Plaintiff compensatory damages for mental anguish, (3) award Plaintiff Special Damages to vindicate the violation of his valuable intangible constitutional rights; (4) award

Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (5) award Plaintiff all other relief deemed proper by the Court.

### D. COUNT IV: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. §1983 (USE OF EXCESSIVE FORCE)

80.     This cause of action, Count IV, is brought against Defendant Puryear, in his individual capacity, through 42 U.S.C. §§ 1983 and 1988, for violating the Fourth Amendment of the United States Constitution.

81.     Plaintiff incorporates by reference, as if fully stated below, the factual allegations in Paragraphs 5-38, 40-42, 45, 48-55, and 59, *supra*.

82.     The use of any force violates clearly established law when officers do not suspect that the individual committed a serious crime and he or she did not pose an immediate threat of harm and or resist arrest.

83.     After his restraint on the ground by White, R. Hand obeyed Puryear's and or White's commands.

84.     Puryear did not reasonably believe R. Hand was somehow connected with criminal activity or that he had committed a crime, that he was dangerous to himself or others, resisting arrest, or trying to escape.

85.     Puryear's tasing of R. Hand after his restraint by White, his subsequent beating of R. Hand, his tasing of R. Hand again, his throwing of R. Hand against the cruiser while handcuffed, and his throwing R. Hand on the ground while handcuffed, constituted an unlawful use of excessive force.

19

86.    The extent of force used by Puryear was not necessary or objectively reasonable.

87.    Because Puryear used excessive force, and arguable reasonable suspicion and or probable cause did not exist, he violated many known and fixed policies and or rules of the Colbert County Sheriff's Office. Thus, his actions were not undertaken pursuant to the performance of his duties, and he was not acting within the scope of his authority.

88.    Puryear's use of excessive force violated R. Hand's constitutional rights and caused him to suffer physical injury; past and ongoing medical conditions and pain, unpaid medical bills; past and ongoing emotional distress; lost income; and disability.

89.    Based on the preceding, reasonable jurors could conclude that given the circumstances, the amount of force Puryear used to arrest R. Hand was not necessary, proportional, or objectively reasonable; Puryear knew or reasonably should of have known that the force he used violated R. Hand's federally protected constitutional rights; Puryear was plainly incompetent; or Puryear's actions were done with a reckless indifference and a callous disregard for R. Hand's constitutional rights and well-being.

**WHEREFORE,** Plaintiff respectfully prays this Court: (1) enter a judgment against Puryear and White in their individual capacities; (2) award Plaintiff

compensatory damages for mental anguish, (3) award Plaintiff Special Damages and General Damages to compensate him for lost and future earning capacity, medical bills, and to vindicate the violation of his valuable intangible constitutional rights; (4) award Plaintiff punitive damages, (5) award Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (6) award Plaintiff all other relief deemed proper by the Court.

### E.   COUNT V: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. §1983 (FAILURE TO INTERVENE TO PROTECT CONSTITUTIONAL RIGHTS)

90.     This cause of action, Count V, is brought against Defendant White, in his individual capacity, through 42 U.S.C. §§ 1983 and 1988, for violating the Fourth Amendment of the United States Constitution.

91.     It is settled law that if a member of law enforcement, whether supervisory or not, fails or refuses to intervene when a constitutional violation takes place in his presence, that officer is personally liable.

92.     Plaintiff incorporates by reference, as if fully stated below, the factual allegations in Paragraphs 5-38, 40-42, 45, 48-55, and 59, *supra*.

93.     White knew or should have known Puryear's use of excessive force against R. Hand and his illegal search of R. Hand violated R. Hand's constitutional rights.

94.     Each instance occurred in White's presence.

21

95.    At any time, White was able to intervene to stop Puryear's use of excessive force.

96.    White knew or should have known of his affirmative duty to intervene to protect R. Hand's constitutional rights.

97.    White was plainly incompetent when failing to intervene, or in the alternative, his failure to intervene was intentional and establishes a reckless indifference and a callous disregard for R. Hand's constitutional rights.

98.    As a result of White's failure to intervene, R. Hand suffered physical injury; past and ongoing medical conditions and pain, unpaid medical bills; past and ongoing emotional distress; lost income; and disability.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against White in his individual capacity; (2) award Plaintiff compensatory damages for mental anguish, (3) award Plaintiff Special Damages and General Damages to compensate him for lost and future earning capacity, medical bills, and to vindicate the violation of his valuable intangible constitutional rights; (4) award Plaintiff punitive damages, (5) award Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (6) award Plaintiff all other relief deemed proper by the Court.

## STATE CLAIMS

**F.    COUNT VI: ASSAULT AND BATTERY (AGAINST PURYEAR)**

99.    This cause of action, Count VI, is brought against Defendants Puryear and White in their individual capacities.

100.   Plaintiff incorporates by reference, as if fully stated below, the factual allegations in Paragraphs 5-38, 40-42, 45, 48-55, and 59, *supra*.

101.   If not plainly incompetent, Puryear's use of force against R. Hand was willful, done maliciously, and in bad faith.

102.   While beating R. Hand or within proximity, Puryear, and White cursed and or mocked him.

103.   When Puryear tased R. Hand the second time, he stunned himself accidentally, and he attempted/threatened to stun R. Hand a third time purely out of anger.

104.   Both Defendant's use of force violated numerous known and fixed policies and or rules of the Colbert County Sheriff's Office. Both were terminated by the Colbert County Sheriff for violating those fixed rules and policies.

105.   Thus, their actions were not undertaken pursuant to the performance of their duties, they were acting within the scope of his authority, and their use of force was done maliciously, in bad faith, and outside their employment. Accordingly, they have no right to state immunity or state-agent immunity in his individual capacity.

106.   The legally unjustified way Defendants assaulted and battered R. Hand in violation of those rules, and their lies later when filing reports about the incident, prove Defendants' actions were willful, malicious, and conducted in bad faith.

107.   Defendants' assault and battery of R. Hand caused him to suffer physical injury; past and ongoing medical conditions and pain, unpaid medical bills; past and ongoing emotional distress; lost income; and disability.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Defendants Puryear and White in their individual capacities; (2) award Plaintiff compensatory damages; (3) award Plaintiff punitive damages; and (4) award Plaintiff all other relief deemed proper by the Court.

### G.   COUNT VI: FALSE IMPRISONMENT

108.   This cause of action, Count VI, is brought against Defendants Puryear and White, in their individual capacities.

109.   Plaintiff incorporates by reference, as if fully stated below, the factual allegations in Paragraphs 5-35, 46-47, 51-52, 54-55, 59, and 60-62, *supra*.

110.   If not plainly incompetent, Defendants' false imprisonment of R. Hand was willful, done maliciously, and in bad faith.

111.   Without legal justification, Puryear, and White used unreasonable force to restrain R. Hand in handcuffs, he was then detained, and taken to jail.

112.   There did not exist arguable probable cause for the arrest underlying

R. Hand's confinement.

113. To coverup their violation of R. Hands constitutional rights, Puryear, and White arrested, detained, and jailed him, and then used the same to support incident reports on which they lied about the encounter.

114. Defendants' false imprisonment of R. Hand therefore was not conducted pursuant to their law enforcement duties, and or it violated known rules of the Sheriff's Office; rules for which they did not have authority or discretion to deviate but knowingly did so anyway.

115. The preceding demonstrates that Defendants willfully, maliciously, and in bad faith, falsely imprisoned R. Hand.

116. As a result, Defendants' false imprisonment of R. Hand exceeded their authority as Colbert County deputies and or reserve deputies, they acted outside their employment, and they have no right to state immunity or state-agent immunity in their individual capacities.

117. Defendants' false imprisonment of R. Hand caused him to suffer physical injury; past and ongoing medical conditions and pain, unpaid medical bills; past and ongoing emotional distress; lost income; and disability.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Defendant Puryear in his individual capacity; (2) award Plaintiff compensatory damages; (3) award Plaintiff punitive damages; and (4) award

Plaintiff all other relief deemed proper by the Court.

Respectfully submitted,

/s/ Robert J. Camp
Robert J. Camp
Counsel for the Plaintiff

OF COUNSEL:
**WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, L.L.C.**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500

26